**FILED & ENTERED**

**FEB 27 2014**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Sayeda H Athar<br><br><br><br>_____<br>                         Debtor(s).<br><br>Sayeda H Athar<br><br>                        Plaintiff(s),<br>  v.<br><br><br>State Board Of Equalization<br><br>                        Defendant(s). | CHAPTER 7<br><br>Case No.:  1:11-bk-23947-MT<br><br>Adv No:   1:12-ap-01038-MT<br><br><br><br><br><br>**AMENDED MEMORANDUM OF DECISION RE: TRIAL TO DETERMINE DISCHARGEABILITY OF TAX DEBT** |

**MEMORANDUM DECISION AFTER TRIAL**

    This matter arises out of the dispute between discharged Chapter 7 debtor and Plaintiff, Sayeda Athar ("Athar"), and Defendant tax creditor State Board of Equalization ("BOE") on the issue of whether the Chapter 7 discharge in the main proceeding was effective against her sales tax liabilities arising out of the operation of a store known as "Quick Mart," or whether those tax obligations were excepted from discharge pursuant to 11 U.S.C. § 523(a).

    The matter has been tried and submitted for decision. At trial, Athar testified and BOE offered the testimony of Ross Masaki ("Masaki"). The central issue during trial was whether Athar was legally a general partner of Quick Mart.

-1-

**PROCEDURAL HISTORY**

On December 2, 2011, Athar filed for Chapter 7 Bankruptcy. See Bankruptcy Case no. 1:11-bk-23947-MT, Docket no. 1. Athar received discharge on March 14, 2012. On January 31, 2012, Athar filed this adversary against Defendant BOE seeking declaratory relief as to whether the tax debt had been discharged. See Adversary Proceeding no. 1:12-ap-01038-MT, Docket no. 1. The adversary alleged there was an actual controversy over whether Athar was liable for Quick Mart sales taxes collected and not turned over and whether the taxes were non-dischargeable. Athar claimed that she did not owe the taxes because she never collected any sales tax and the taxes measured on income were dischargeable under 11 U.S.C § 507. On May 16, 2012, BOE filed its answer to the adversary complaint claiming that the taxes were owed and nondischargeable. See Id. Docket no. 8. The Revised Joint Trial Order ("Pre-trial Order") was filed January 22, 2013. See Id. Docket no. 16. Originally, the trial was scheduled to be heard on November 21, 2013, before the Honorable William V. Altenberger. However, the trial date was vacated and set for January 14, 2014 before the Honorable Maureen Tighe. See Id. Docket no. 27 and 29. The trial was held on January 14, 2014.

**FINDINGS OF FACT[1]**

On July 18, 2001, Athar and her father, Mustafizur Rehman ("Rehman"), signed a written Form BOE- 400 Application for a California Retail Seller's Permit ("BOE Application") for the operation of a convenience store, "Quick Mart". See Trial Exhibit 1 (Application for Sellers Permit and Registration as a Retailer). Under the heading of "Ownership and Organization changes", Quick Mart's application indicated that Athar was a partner in Quick Mart. Id. Quick Mart was a convenience store engaged in the business of selling food and beverages.

On July 19, 2001, a Fictitious Business Name Statement was recorded in Los Angeles County Official Records over the signatures of Athar and her father, which stated that the "following persons . . . are . . . doing business as: Quick Mart." See Trial Exhibit 2 (Fictitious Name Statement). The registrants listed were Athar and her father. Id.

On August 30, 2001, Athar was listed as the primary owner of Quick Mart on the beer and wine license for the California Department of Alcohol Beverage Control ("ABC"). See Trial Exhibit 3 (California Department of Alcohol Beverage Control License Query System Summary).

On or about December 18, 2009, BOE issued Notices of Determination of sales tax liability ("NOD #1") to Athar, as well as to Quick Mart and her father, Rehman. See Trial Exhibit 4 (State of California Board of Equalization Notice). BOE determined that $86,430.69 in sales taxes was owed as a result of the operation of Quick Mart. Id.

---

[1] The following findings of fact and legal conclusions constitute the court's findings under *Federal Rule of Civil Procedure 52(a)*, applicable in this bankruptcy proceeding under *Federal Rule of Bankruptcy Procedure 9014*. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

On June 2, 2011, Athar's father, Rehman, passed away. On August 16, 2011, Athar signed over Power of Attorney to Aminul Islam ("Islam") to represent Quick Mart and herself before BOE. See Exhibit 8 (State Board of Equalization Power of Attorney).

On December 2, 2011, Athar listed the California beer and wine license as her own property on her Chapter 7 schedules. See Trial Exhibit 10 (Voluntary Petition) pg. 14, 22, and 26.

On February 23, 2013, the BOE issued and served a written Decision and Recommendation that found that Athar was a general partner in Quick Mart. The BOE issued a Notice of Redetermination (the "NOR") to Athar as a partner on the earlier 2005 – 2008 audit liability on October 15, 2012. That assessment became final on November 14, 2012.

Athar formally closed out the BOE permit on March 12, 2012, with an effective closing date of June 30, 2011. See Trial Exhibit 13 (Notice of Closeout for Sellers Permit). Athar failed to notify or advise the State Board of Equalization that she was not a partner in Quick Mart, until after Quick Mart went out of business.

At the trial on direct examination, Athar testified that she did not know that the Form BOE application she signed listed her as a "Partner". She testified that she had not read the designation of "Partner" that appeared next to her signature on the BOE Application at the time she signed the Application. Athar claimed her father needed her to sign the documents because she had better credit and he needed her to sign to get a business license.

Throughout the trial, Athar testified that she did not have the authority or discretion as a partner to determine what obligations Quick Mart would pay or whether or not Quick Mart's State Board of Equalization sales tax obligations would be paid. She believed she had no duty or responsibility as a partner to act for Quick Mart with respect to the filing of quarterly tax returns during the relevant period. She did not willfully fail to pay or cause to be remitted any Quick Mart collected taxes due to the State Board of Equalization.

On cross-examination, she testified that the sequence of events was as follows: (1) Her father talked to her about needing her signature on the document; (2) he then filled out the document; and (3) Athar then signed the original of the document. Athar testified she did this because she knew he needed it for his business and she always wants to help her family.

Athar also testified that she could not recall reading any of the statements and schedules that accompanied her Chapter 7 Petition when it was filed with the Court. In fact, she could not recall reading any of the documents among the Trial Exhibits that bear her signature, although she admitted signing each of them. With the exception of the bankruptcy filings, Athar's testimony was that she signed each of Trial Exhibits that bear her signature because she believed her signing them would help her family.

Athar testified in English at trial. She admitted that she can read and write in English. She once worked as a store employee for Sears, and she successfully passed her California DMV written examination for her driver's license in English on the third try. While English clearly was a second language, her English was adequate, and she appeared to understand the questions asked.  Her answers were responsive except when the conclusions to be drawn from those answers were not consistent with her theory of liability.  She was credible that she was not

involved in the day to day running of the business and that she followed the advice of others to do a favor for her family.

The BOE offered the testimony of Ross Masaki ("Masaki"). The California State Board of Equalization has employed Masaki for the past 15 years. His current position is a Business Tax Compliance Specialist working in the Special Operations Bankruptcy Unit. Masaki monitors bankruptcy cases filed by BOE permit holders. He reviews their bankruptcy cases to ensure compliance with BOE regulations and that the state interests are taken care of. Masaki was familiar with BOE procedures for issuing licenses.

Masaki testified that once BOE received the Quick Mart application, it processed the application as a general partnership and issued a sellers permit that is required to do business. The BOE relied on Athar's representations that she was a partner of Quick Mart in issuing the license because the BOE treats all information in an application as true and correct and relies on the statements in the application when issuing permits. Masaki testified that the BOE relied that the individuals listed on the BOE application were partners, doing business as Quick Mart and running the business of selling beer and wine as a general grocer. He said the BOE permit was categorized as a general partnership and Athar and her father listed as partners. Masaki claimed that BOE relies on the "partner" designation to determine who is liable for the tax debt and who is responsible for filing tax returns.

During trial, BOE presented evidence that as of the date of Rehman's death, Athar:

- Gave her cousin Aminul Islam a formal Power of Attorney to represent Quick Mart and herself before BOE on August 16, 2011;
- Assumed control of the physical assets of Quick Mart;
- Formally closed out the BOE sales permit on March 2, 2012;
- Attempted to sell Quick Mart as a going concern;
- Assumed ownership and control of Quick Mart's ABC beer and wine license;
- Filed a request with BOE for relief from penalty, collection costs, and interest on October 14, 2011, which states under penalty of perjury: "[W]e have been trying to sell the business . . . The sooner this gets compromised and settled the sooner we can sell the business . . . We had tried to sell the business . . ."; and
- Listed one or more assets of Quick Mart in the schedules of property filed in her subsequent Chapter 7 proceeding, including the ABC beer and wine license.
- 

See Trial Exhibits 7-14 and BOE's Trial Brief pg. 7.

**CONCLUSIONS OF LAW**

According to the Pre-Trial Order there were seven legal issues to be litigated at trial. See Adversary Docket no. 16. During trial, Athar alleged several theories as to why she should be excused from the BOE tax liability. However, there was no evidence presented during trial or in her closing argument to legally support these assertions, and Athar did not argue or present evidence concerning most of the issues delineated in the Pre-trial Order. The legal issues from the Pre-Trial Order argued during trial were 1) whether Athar is estopped from denying that she

was a partner in Quick Mart due to her written representations made to the BOE that she was a partner, and her failure to notify the BOE that she was not a partner while the business continued to operate and 2) whether Athar owes any taxes at all to BOE. Thus, the central issue is whether Athar was considered a partner of Quick Mart and is liable for the state tax obligation incurred by Quick Mart.

**California Corporations Code § 16308 Purported Partner**

"Except with respect to registered limited liability partnerships and foreign limited liability partnerships:

> (a)  If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership. If the representation, either by the purported partner or by a person with the purported partner's consent, is made in a public manner, the purported partner is liable to a person who relies upon the purported partnership even if the purported partner is not aware of being held out as a partner to the claimant. If partnership liability results, the purported partner is liable with respect to that liability as if the purported partner were a partner. If no partnership liability results, the purported partner is liable with respect to that liability jointly and severally with any other person consenting to the representation.
>
> (b)  If a person is thus represented to be a partner in an existing partnership, or with one or more persons not partners, the purported partner is an agent of persons consenting to the representation to bind them to the same extent and in the same manner as if the purported partner were a partner, with respect to persons who enter into transactions in reliance upon the representation. If all of the partners of the existing partnership consent to the representation, a partnership act or obligation results. If fewer than all of the partners of the existing partnership consent to the representation, the person acting and the partners consenting to the representation are jointly and severally liable.
>
> (c)  A person is not liable as a partner merely because the person is named by another in a statement of partnership authority.
>
> (d)  A person does not continue to be liable as a partner merely because of a failure to file a statement of dissociation or to amend a statement of partnership authority to indicate the partner's dissociation from the partnership."

Cal Corp Code § 16308

    Under California's Uniform Partnership Act of 1994 ("UPA"), Cal. Corp. Code § 16100 et seq., liability for the debts of a partnership may be premised on an actual partnership pursuant to Cal. Corp. Code § 16202, or partnership by estoppel pursuant to Cal. Corp. Code § 16308(a). Once partnership is established, Cal. Corp. Code § 16308(a) provides that, unless otherwise

agreed by the claimant or provided by law, all partners are jointly and severally liable for all partnership obligations. Cal. Corp. Code § 16308(a). Whether a partnership exists is a question of fact to be determined by the trial court. In re Lona, 393 B.R. 1, 3 (U.S. 2008). In California, the burden of proving a partnership is on the party alleging it. Id.

In California, "[t]he association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a). In re Tsurukawa II, 287 B.R. at 521. Additionally, being passive in business dealings does not prevent a finding of partnership. "[A] partnership can exist as long as the parties have the right to manage the business, even though in practice one partner relinquishes the day-to-day management of the business to the other partner." In re Tsurukawa II, 287 B.R. at 522 (citations omitted).

The rule of responsibility and liability of one held out as a partner is founded upon the equitable doctrine of estoppel. Dodd v. Tebbetts (1926) 198 Cal 333, 244 P 1081. Whether one is an ostensible partner depends on whether his acts and conduct are factually and legally sufficient to lead another to believe he is partner and has assumed responsibility as such. J. C. Wattenbarger & Sons v. Sanders (1963) Cal App 5th Dist, 216 Cal App 2d 495, 30 Cal Rptr 910.

[C]ourts interpreting other states' partnership statutes have held that a partner is liable for the partnership's unpaid taxes even though the partner was not personally responsible for paying those taxes. See Livingston v. United States, 793 F. Supp. 251, 254 (D. Idaho 1992) (applying Idaho law, and rejecting argument similar to Debtors' argument in this case); In re Norton, 158 B.R. 834 (Bankr. D. Idaho 1993) (applying Utah law and following Livingston). State Bd. of Equalization v. Leal (In re Leal), 366 B.R. 77, 82 (U.S. 2007).

**Signing in ignorance of contents**

> "First, the law effectively presumes that everyone who signs a contract has read it thoroughly, whether or not that is true. A basic rule of contract law is, " 'in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.' " (Stewart v. Preston Pipeline Inc. (2005) 134 Cal.App.4th 1565, 1588, 36 Cal.Rptr.3d 901.) [C]ourts must also presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides, whether or not they subjectively did: " 'Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone.' ... '[T]he parties' expressed objective intent, not their unexpressed subjective intent, governs.' " (In re Tobacco Cases I (2010) 186 Cal.App.4th 42, 47, 111 Cal.Rptr.3d 313.) And finally, in perhaps the biggest legal fiction of all, we are required to presume that parties to a contract both know and have in mind " 'all applicable laws in existence when an agreement is made ... necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated.' " (Swenson v. File (1970) 3 Cal.3d 389, 393, 90 Cal.Rptr. 580, 475 P.2d 852.)."

Roldan v. Callahan & Blaine, 219 Cal. App. 4th 87, 93-94, 161 Cal. Rptr. 3d 493, 497-98 (2013).

**Partnership Between Athar and Rehman**

Based on Athar's testimony and the surrounding circumstances as a whole, the Court finds BOE has sustained its burden of proving that the tax was properly imposed based on its partnership findings.

**Actual Partnership**

Athar argues that a partnership requires intent and that there was no intent to form a partnership with her father. She alleges she had no control over the business; therefore she should have no tax liability. She claims BOE is making her liable on a technicality because she signed the BOE application which had the words partner written beside her name.

The United States Supreme Court has long held that intent is not required to form a partnership:

> "A person who is not in fact a partner, who has no interest in the business of the partnership and does not share in its profits, and is sought to be charged for its debts because of having held himself out, or permitted himself to be held out, as a partner, cannot be made liable upon contracts of the partnership except with those who have contracted with the partnership upon the faith of such holding out. In such a case, the only ground of charging him as a partner is that, by his conduct in holding himself out as a partner, he has induced persons dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the partnership.

Thompson v. First Nat. Bank of Toledo, Ohio, 111 U.S. 529, 536-37, 4 S. Ct. 689, 692, 28 L. Ed. 507 (1884).

Pursuant to the UPA, '[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.' Cal. Corp. Code § 16202(a). In re Lona, 393 B.R. 1, 14-15 (U.S. 2008). "The fact, however, that profits and losses are not shared equally does not necessarily compel a conclusion that no partnership existed. Constans v. Ross, 106 Cal. App. 2d at 389. Nor does the unequal apportionment of management duties compel a conclusion of no partnership. Id.; Associated Piping & Eng'g v. Jones, 17 Cal. App. 2d at 111. It is immaterial if the parties do not designate their relationship as a partnership or if they do not know that they are partners, for intent may be implied from their acts. Id. at 110 (citations omitted); Thompson v. O.W. Childs Estate Co., 90 Cal. App. 552, 554, 266 P. 293 (Cal. Dist. Ct. App. 1928) (citation omitted)". In re Lona, 393 B.R. 1, 14-15 (U.S. 2008).

The issues are not whether Athar intended to form a partnership with her father or whether she knew what the documents she was signing were. The issue does not depend on who had control of Quick Mart or even whether Athar was an active partner.

Where the rights of a third party are involved, the fundamental question is whether, based on the conduct of the alleged partners, the third party had a right to believe that a partnership existed. In re Lona, 393 B.R. 1, 14-15 (U.S. 2008) citing Hansen v. Burford, 212 Cal. 100, 110, 297 P. 908 (Cal. 1931); Associated Piping & Eng'g v. Jones, 17 Cal. App. 2d 107, 111, 61 P.2d 536 (Cal. Dist. Ct. App. 1936).

Under California law Athar was a partner of Quick Mart. Athar signed all the documents required to start and close the business. It is undisputed that Athar signed an application that represented to the BOE that she was a "partner" in Quick Mart, and a similar representation was made to another California state agency, for the purpose of obtaining permits and licenses to allow Quick Mart to operate legally. A fictitious business name statement was also filed for Athar and her father in Los Angeles County records for Quick Mart. In addition, the NOD issued by the BOE was addressed to Mr. Rehman, to Quick Mart, and to Athar herself, stating that liability was assessed "to the partnership under which the account [was] registered and to each of the partners of the partnership."

In this case, intent to form a partnership is implied through Athar's actions. She testified that she signed the documents to help her father because she always wanted to help her family. Athar may have been operating under the assumption that she was just helping her family by her actions without realizing the legal consequences, but that does not eliminate her liability as a partner. She held herself as a general partner and never notified any of the state agencies that she was no longer a partner. She gave consent to first her father and then to Mr. Islam to conduct business activities in her name. In fact, she listed the ABC license as an asset in her bankruptcy petition. A business license and credit were extended based on her name, even if she lent her name for the benefit of her family.

**Partnership by Estoppel**

Even if Athar's conduct were not sufficient to constitute an actual partnership, there is sufficient evidence for the Court to find that there was a partnership by estoppel. The acts and omissions in question, as well as other evidence of the exercise of ownership authority, estop Athar from denying that she was a partner with her father.

The UPA provides that where there is insufficient evidence of an actual partnership, partnership liability may arise by estoppel. The UPA provides for liability for one who, by words or by conduct, purports to be, or consents to being represented by another, as a partner in a partnership. The purported partner is liable to the person to whom the representation is made if that person, relying on the representation, enters into a transaction with the alleged partnership. Cal. Corp. Code § 16308(a) (West 2008). The conduct of the ostensible partner must be sufficient to induce a reasonable and prudent person to believe that a partnership exists and for that person to enter into a transaction in reliance on that belief. Armato v. Baden, 71 Cal. App. 4th 885, 898, 84 Cal. Rptr. 2d 294 (Cal. Ct. App. 1999) citing Crabbe v. Mires, 112 Cal. App. 2d 456, 459, 246 P.2d 991 (Cal. Dist. Ct. App. 1952)).

To prove partnership by estoppel, BOE must show that: (1) the acts and conduct of Athar were factually and legally sufficient to lead BOE to reasonably believe Athar was a copartner; and (2) BOE relied on Athar's representations in entering into transactions with Quick Mart. In

re Lona, 393 B.R. 1, 16 (Bankr. N.D. Cal. 2008) citing J&J Builders Supply v. Caffin, 248 Cal. App. 2d 292, 297, 56 Cal. Rptr. 365 (Cal. Ct. App. 1967); J.C. Wattenbarger & Sons v. Sanders, 216 Cal. App. 2d 495, 500-01, 30 Cal. Rptr. 910 (Cal. Dist. Ct. App. 1963); Hunter v. Croysdill, 169 Cal. App. 2d 307, 315, 337 P.2d 174.

Here, BOE reasonably relied on the representations contained in the application signed by Athar in order to issue the sales permit. Overall, the evidence presented at trial showed a pattern of conduct in which not one but two California governmental entities received representations in writings signed by Athar that she was a partner in Quick Mart, as well as substantial series of subsequent exercises of ownership on the part of Athar. BOE was entitled to rely on the written statements attested to by Athar's signature in the absence of any direct and specific knowledge on its part that they were untrue. Thus, there was a partnership by estoppel between Athar and Rehman.

**Liability for signing in ignorance**

No evidence was presented to support Athar's argument that there was strong cultural pressure for Athar to sign these documents. Nevertheless, subjective intent is not the issue. The law is clear that, regardless of why Athar held herself out as a general partner and agreed to use her credit to establish the business, she functions as a general partner. Athar is regrettably now left to deal with the consequences. "The court's conclusions reflect the requirement under California law that persons who reap the benefits of a partnership must also be subject to its liabilities. Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 523 (B.A.P. 9th Cir. 2002).

Athar did not know the legal consequences of the documents she signed but she did know that her father was using her name for her credit and that others would rely on this representation. She knew she was helping her father obtain permits for Quick Mart. Without the business permit (Exhibit 1), it would not have been legal for Quick Mart to do business. She did not consider herself a partner, but others relied on her representation. She participated in establishing her father's business, and unfortunately must now accept the consequences the law imposes.

**Determination of Debtor's Tax Liability by the Bankruptcy Court**

Athar claimed in her closing argument that the Court should review the administrative agency's finding of tax liability where the finding was made at an uncontested hearing. See 11 U.S.C § 505(a)(2)(A). The Court declines to base its ruling on § 505 because neither the Complaint nor the Joint Revised Pretrial Order invoked § 505. The Complaint is a request for a declaratory judgment of dischargeability under "11 U.S.C § 507". The pre-trial order then refers solely to 11 U.S.C § 523(a)(1). Also, there was no evidence presented at trial that the tax was illegal or that any other amount of tax was appropriate. There is no basis to find that the BOE finding was improper.

**CONCLUSION**

Thus, for the reasons stated above, the California sales taxes assessed by the BOE are not discharged under 11 U.S.C § 523(a)(1). Defendant should submit a judgment and order in accordance with this ruling.

Date: February 27, 2014

*Maureen A. Tighe*
Maureen A. Tighe
United States Bankruptcy Judge